UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Juanita Hickinbottom

    v.                                                                            Civil No. 17-cv-713-LM
                                                                              Opinion No. 2019 DNH 138

Atrium Medical Corp., et al.

In re: Atrium Medical Corp.       MDL No. 2753
C-QUR Mesh Products Liability
Litigation

O R D E R

      Juanita Hickinbottom brings suit against Atrium Medical Corporation ("Atrium"), a medical device company that manufactured and sold C-QUR mesh, and two related companies, Maquet Cardiovascular US Sales, LLC ("Maquet") and Getinge AB ("Getinge"), alleging product liability claims, breach of warranty claims, and violation of consumer protection laws. Hickinbottom's suit is part of a multi-district litigation ("MDL") proceeding involving claims that C-QUR mesh was, among other things, defective and unreasonably dangerous and caused injury when surgically implanted for hernia repair. Her case was selected in the MDL proceeding for the Initial Discovery Pool, making it a bellwether case. Defendants Atrium and Maquet move to dismiss Hickinbottom's claims on a variety of grounds.[1] Hickinbottom objects.

---

[1] Getinge has filed a separate motion to dismiss in the main MDL case contending that the court lacks personal jurisdiction over it. That motion remains pending. Getinge does not join in the instant motion.

**STANDARD OF REVIEW**

Under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

**BACKGROUND**

Hickinbottom had a laparoscopic procedure to repair a hernia on August 15, 2013 at Baptist Memorial Hospital ("Baptist Memorial") in Oxford, Mississippi. A piece of C-QUR Mosaic mesh was used for the repair. Because of abdominal pain, she had "revisional surgery" on October 17, 2013 at Baptist Memorial, during which stitches were removed, abdominal wall scarring was noted, and the wounds were irrigated.

Atrium, which designed, marketed, and sold the C-QUR mesh that was implanted into Hickinbottom, is located in New Hampshire. Maquet is located in New Jersey, and Getinge is a Swedish corporation. Hickinbottom alleges that Maquet and Getinge are responsible for Atrium's actions and exercised control over Atrium with respect to oversight and compliance with applicable safety standards.

Hickinbottom alleges, among other things, that defendants designed, manufactured, marketed, and sold C-QUR mesh to be used by surgeons for hernia repair. C-QUR mesh was intended to be permanently implanted for those repairs, and defendants represented that C-QUR

mesh was safe and effective for that purpose. Hickinbottom further alleges that C-QUR mesh was not safe or effective for its intended purpose, that defendants failed to adequately research and test it to determine the risks and benefits of the mesh, and that they failed to warn of risks although they had been notified that the mesh was causing widespread catastrophic complications. Hickinbottom brings claims for negligence (Count I), strict liability – design defect (Count II), strict liability – manufacturing defect (Count III), strict liability – failure to warn (Count IV), breach of express warranty (Count V), breach of implied warranties of merchantability and fitness of purpose (Count VI), and violation of consumer protection laws (Count VII). She seeks compensatory and enhanced compensatory damages.

## DISCUSSION

Defendants Atrium and Maquet move to dismiss Hickinbottom's claims, other than the violation of consumer protection laws claim in Count VII, as time-barred under the applicable statutes of limitations.[2] They also argue that Mississippi law governs the liability portions of Hickinbottom's claims and that her claims fail under the applicable law. Hickinbottom objects, arguing that her claims are not time-barred, and that New Hampshire law governs the liability portions of her claims.

---

[2] Defendants state in their memorandum in support of their motion to dismiss that "all of Plaintiff's claims are time barred under the applicable statute of limitations and should be dismissed with prejudice." Doc. no. 67-1 at 2. But they make no mention of Hickinbottom's consumer protection claim in the section of their memorandum devoted to their statute of limitations argument. See id. at 3-7. Indeed, that section is titled "Plaintiff's Negligence, Strict Liability, And Breach of Warranty Claims Are Time-Barred." Id. at 3. Therefore, the court does not address the statute of limitations as to Count VII.

I. Statute of Limitations

The parties agree that New Hampshire's statutes of limitations, as procedural rules of the forum state, apply in this case. See TIG Ins. Co. v. ElFlow Ins. Ltd., No. 14-cv-459-JL, 2015 WL 5714686, at *3 (D.N.H. Sept. 29, 2015) (discussing circumstances under which it is appropriate for this court sitting in diversity to apply New Hampshire's statute of limitations). They further agree that Hickinbottom's product liability claims, Counts I through IV, are governed by RSA 508:4, I, and the breach of warranty claims, Counts V and VI, are governed by RSA 382-A:2-725.

A. Product Liability Claims

Under New Hampshire law, "[e]xcept as otherwise provided by law, all personal actions, . . . may be brought only within 3 years of the act or omission complained of." RSA 508:4, I. An exception to that time limit exists

> when the injury and its causal relationship to the act or omission were not discovered and could not reasonably have been discovered at the time of the act or omission, the action shall be commenced within 3 years of the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its causal relationship to the act or omission complained of.

RSA 508:4, I. If the defendant meets the initial burden of showing that the action was not brought within three years of the underlying events, to avoid dismissal, the plaintiff must show that the discovery rule or another tolling doctrine, such as the fraudulent concealment rule, applies. Beane v. Dana S. Beane & Co., P.C., 160 N.H. 708, 712 (2010).

"[T]he fraudulent concealment rule states that when facts essential to the cause of action are fraudulently concealed, the statute of limitations is tolled until the plaintiff has discovered such facts or could have done so in the exercise of reasonable diligence." Bricker v. Putnam,

128 N.H. 162, 165 (1986). The equitable purpose of the fraudulent concealment rule in tolling the limitations period is to prevent the wrongdoer from receiving and keeping the benefit of its fraudulent conduct. Lakeman v. LaFrance, 102 N.H. 300, 303 (1959). Similarly, the doctrine of equitable tolling delays the limitations deadline when the plaintiff "was prevented in some extraordinary way from exercising his or her rights." Portsmouth Country Club v. Town of Greenland, 152 N.H. 617, 623 (2005).

Defendants argue that Hickinbottom's product liability claims are time-barred because Hickinbottom had the mesh implanted in August 2013, had revision surgery two months later in October 2013, and did not bring suit until December 12, 2017, more than three years later. In response, Hickinbottom invokes the protection of the discovery rule and the doctrines of fraudulent concealment and equitable tolling.

Hickinbottom alleges that defendants concealed the defective design of the C-QUR mesh that was implanted to repair her hernia and that they misled physicians and surgeons about the mesh product's efficacy and serious complications. See, e.g., doc. no. 65 at ¶¶ 33, 132, 139, 171. She contends that because of those actions she did not know and could not have known before at least December 13, 2014, that the C-QUR mesh's design or manufacturing defects caused her injuries.

"The district court may grant a motion to dismiss based on a defendant's affirmative defense of a statute of limitations when the pleader's allegations leave no doubt that an asserted claim is time-barred." DeGrandis v. Children's Hosp. Boston, 806 F.3d 13, 17 (1st Cir. 2015) (internal quotation marks omitted); see also Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 17 (1st Cir. 2004). Taking Hickinbottom's allegations in the light most favorable to her and resolving reasonable inferences in her favor, the allegations are sufficient to preclude dismissal

5

of her product liability claims as time-barred at this stage of the litigation. If, as the case develops through discovery, defendants find facts that support the statute-of-limitations defense, they may raise that defense at an appropriate time, such as in a motion for summary judgment.

B. Breach of Warranty Claims

Hickinbottom alleges both breach of express warranty (Count V) and breach of implied warranties (Count VI) claims. The parties agree that RSA 382-A:2-725 provides the applicable statute of limitations for Hickinbottom's breach of warranty claims.

RSA 382-A:2-725(1) provides that "[a]n action for breach of any contract for sale must be commenced within four years after the cause of action has accrued." "A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." RSA 382-A:2-725(2). "A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." Id.

The discovery rule for future performance does not apply to implied warranties. Kelleher v. Marvin Lumber & Cedar Co., 152 N.H. 813, 853 (2005). In addition, while equitable tolling and the fraudulent concealment rule may extend the limitation period for purposes of a claim of breach of an express warranty, they do not apply to breach of implied warranties claims. Begley v. Windsor Surry Co., Civ. No. 17-cv-317-LM, 2018 WL 1401796, at *8 (D.N.H. Mar. 19, 2018) (relying on Lockheed Martin Corp. v. RFI Supply, Inc., 440 F.3d 549, 556-57 (1st Cir. 2006)).

Defendants assert that the breach of warranty claims accrued when the mesh product was implanted, August 15, 2013, which is more than four years before Hickinbottom brought suit in

6

December 2017. Hickinbottom contends that defendants' warranties extended to future performance of the mesh and, therefore, the accrual date is extended to when the breach of warranty was discovered or should have been discovered. She further contends that she could not have been aware of the defects in the mesh until well after her second surgery. In their reply, defendants argue that the future performance extension does not apply because no such explicit warranty was made and that the future performance extension does not apply to implied warranty claims.

As stated above, the discovery rule for future performance does not apply to implied breach of warranty claims. Nor does equitable tolling or fraudulent concealment. Therefore, Hickinbottom's claim for breach of implied warranties, Count VI, accrued on August 15, 2013, the date of her first surgery. Because Hickinbottom brought this suit more than four years later, Count VI is dismissed as untimely.

The discovery rule for future performance applies to Hickinbottom's breach of express warranty claim if defendants' express language warranted the performance of the mesh for a future period of time or permanently. Kelleher, 152 N.H. at 828. At this stage of the litigation, the court is limited to the allegations in Hickinbottom's amended complaint and does not have defendants' actual advertising or marketing materials. Hickinbottom alleges that defendants warranted that the mesh product was safe and fit for its intended purpose, which was to be surgically implanted into patients. As such, the court may make the reasonable inference that in advertising, marketing, and otherwise promoting C-QUR mesh, defendants expressly warranted the future performance of the mesh product after implant. Therefore, Hickinbottom's allegations are sufficient to preclude dismissal of the express warranty claim, Count V, as time-barred at this

stage of the litigation. Defendants' statute-of-limitations defense to this claim is better raised in a properly supported motion for summary judgment.

II. Choice of Law

As a preliminary matter, Hickinbottom includes a section in her objection that is titled "Ripeness of Choice of Law Determination." Doc. no. 71 at 3. She notes that "[t]here is no rule allowing nor prohibiting choice of law determinations at the motion to dismiss stage." Id. Hickinbottom goes on to discuss cases that address whether the record was sufficiently developed to allow a choice-of-law determination at an early stage of the litigation. Hickinbottom, however, does not identify any missing information that would be necessary for a choice-of-law determination here or actually contend that this case is not sufficiently developed at this stage. Therefore, Hickinbottom has not shown that the choice-of-law determination is premature, and the court employs the analysis.

The parties agree that New Hampshire choice-of-law principles govern the analysis in this bellwether case. See, e.g., Lexington Ins. Co. v. Gen. Acc. Ins. Co. of Am., 338 F.3d 42, 46 (1st Cir. 2003) (noting that in "determining what state law is relevant, a federal court must apply the choice-of-law framework of the forum state"). "Under New Hampshire choice-of-law principles, when more than one state may have an interest in the suit and the choice involves substantive law, the court must first decide whether relevant New Hampshire law actually conflicts with the laws of the other interested states." SIG Arms Inc. v. Emp'rs Ins. of Wausau, 122 F. Supp. 2d 255, 258–59 (D.N.H. 2000). An actual conflict exists only when application of the laws of an interested state other than the forum would change the outcome. Lambert v. Kysar, 983 F.2d 1110, 1114 (1st Cir. 1993). When no actual conflict is shown, the court will

8

apply the law of the forum state which, in this case, is New Hampshire. Aftokinito Props, Inc. v. Millbrook Ventures, LLC, No. 09-cv-415-JD, 2010 WL 3168295, at *3 (D.N.H. Aug. 9, 2010). The party who asserts that the law of another state is different from the law of the forum state bears the burden of proving the content of the foreign law. SIG Arms, 122 F. Supp. 2d at 259.

The parties agree that New Hampshire and Mississippi are interested states. Defendants contend that the product liability laws in New Hampshire and Mississippi conflict because Mississippi has consolidated all product liability claims, regardless of the theory of relief, under the Mississippi Product Liability Act ("MPLA"). See, e.g., Stroud v. Walmart, Inc., No. 1:18CV110-LG-JCG, 2019 WL 2146604, at *3 (S.D. Miss. May 16, 2019). In contrast, product liability in New Hampshire is governed by common law, which allows claims under a variety of theories, including strict liability and negligence. See Short v. Amerada Hess Corp., No. 16-cv-204-JL, 2019 WL 1430106, at *15 (D.N.H. Mar. 29, 2019).

Despite this difference, defendants, who bear the burden to show an <u>actual</u> conflict, have not shown that the application of Mississippi law would change the outcome of Hickinbottom's claims. It is true that "the MPLA has abrogated products-liability claims based on strict-liability or negligence theories, and the MPLA now provides the roadmap for such claims." Elliott v. El Paso Corp., 181 So. 3d 263, 268 (Miss. 2015). Although the MPLA abrogated common law product liability claims, defendants have not shown that the same claims are unavailable under the Act.

In their memorandum in support of their motion to dismiss and in their reply, defendants note certain differences between New Hampshire and Mississippi law. For example, they assert that under Mississippi law, a plaintiff must plead and prove that a feasible alternative design exists in order to maintain a design defect claim while New Hampshire does not recognize that

9

rule.  See doc. no. 67-1 at 11-12.  Taking the allegations in Hickinbottom's amended complaint in the light most favorable to her, defendants have not shown that these differences would change the outcome of Hickinbottom's claims.  Because defendants have not shown that an actual conflict exists between New Hampshire and Mississippi law for purposes of Hickinbottom's claims in this case, no choice of law is necessary, and the court will apply New Hampshire law to the liability portion of Hickinbottom's claims.  See Aftokinito, 2010 WL 3168295, at *3.

III.  Merits of the Claims

Defendants also move to dismiss Hickinbottom's claims on the ground that they are not cognizable under Mississippi law.  Because New Hampshire law, not Mississippi law, governs the claims, defendants' arguments are not relevant.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss (doc. no. 67) is granted as to plaintiff's claim for breach of implied warranties (Count VI) and is otherwise denied.

SO ORDERED.

_____
Landya B. McCafferty
United States District Judge

August 28, 2019

cc:  Counsel of Record